***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gillen and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Gillen with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at and following the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. All parties have been correctly designated, and there is no question as to misjoinder or non-joinder of parties.
2. All parties are properly before the Industrial Commission, the Industrial Commission has jurisdiction over the parties and the subject matter, this case is subject to the North Carolina Workers' Compensation Act, and the parties are bound by and subject to the North Carolina Workers' Compensation Act.
3. An employment relationship existed between Plaintiff and Defendant-Employer at the time of injury on October 6, 2006.
4. Plaintiff's average weekly wage was $1,719.34, which yields the maximum compensation rate for 2006 of $730.00.
5. On October 6, 2006, Plaintiff suffered a compensable cervical strain. Defendants accepted the claim using a Form 60 and paid Plaintiff indemnity and medical compensation.
6. Plaintiff returned to full-duty without restrictions on May 14, 2007, and remains employed at Defendant-Employer.
7. The following exhibits were stipulated into evidence:
 a. The Pretrial Agreement, marked as stipulated exhibit 1.
 b. A group of Plaintiff's medical records, collectively paginated 1-44 and marked as stipulated exhibit 2.
 c. A group of Plaintiff's "occupational medical reports," collectively paginated 1-42 and marked as stipulated exhibit 3.
 d. The Industrial Commission Forms filed in this matter, marked as stipulated exhibit 4. *Page 3 
 e. Plaintiff's payroll records, marked as stipulated exhibit 5.
 f. Responses to discovery, marked as stipulated exhibit 6.
8. The following depositions were taken and received into the record before the Deputy Commissioner:
 a. Dr. Ranjan Shanti Roy,
 b. Dr. Michael D. Getter,
 c. Dr. Robert C. Chen,
 d. Dr. Michael J. Meighen,
 e. Dr. Sue Nelson, and
 f. Rhonda Smith Elliott, P.A.
 *********** ISSUES PRESENTED
Whether Plaintiff's ongoing cervical condition is related to Plaintiff's admittedly compensable injury of October 6, 2006, and to what further medical treatment and/or workers' compensation benefits Plaintiff is entitled.
 ***********
Based upon all of the competent evidence adduced from the record, the undersigned makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the undersigned, Plaintiff was 64 years old. Plaintiff has been employed by Defendant-Employer as a maintenance technician since July 21, 1997. Plaintiff *Page 4 
continues to be employed in this capacity by Defendant-Employer. Plaintiff's job duties include repairing machines that manufacture cigarettes.
2. On October 6, 2006, Plaintiff received a call to repair a certain machine in a bay other than the one in which he normally worked. Furthermore, Plaintiff had never before completed that particular repair.
3. Plaintiff had to assume a very unusual physical position in completing the repair on October 6, 2006. He got on his back underneath the machine with his arms and shoulders raised and used a wrench to repair the machine. Plaintiff had to hold a "sit up" position as he completed the repair, with his head, neck and shoulders raised and only the lower part of his back on the floor. Plaintiff was in that physical position working under the machine for an extended period of time. An hour after repairing the machine, Plaintiff testified that he couldn't move his neck at all due to severe pain, which also ran into his left arm. Plaintiff had never experienced this type of pain prior to October 6, 2006.
4. Plaintiff immediately reported his symptoms to his supervisor, Gary Green. Mr. Green referred Plaintiff to the company nurse, Ms. Theresa George. In her note of October 6, 2006, Nurse George noted the injury of that day involved "adjusting [the] roll block" under the "M5 Protos 80" machine. She also noted that Plaintiff reported "pain in his lower neck and tingling in his left hand." Plaintiff was transported to the hospital.
5. On October 6, 2006, Plaintiff was evaluated by Dr. Robert C. Chen in the emergency room of Northeast Medical Center. The medical note generated from this visit documents the mechanism of injury thusly: "[Plaintiff] was laying on his back working on machinery looking up for a total of approximately 30 or so minutes today. . . . [Plaintiff] started to have diffuse lower neck pain, stiffness, and ache. . . . [Plaintiff] also complained of having left hand palmar tingling and numbness *Page 5 
sensation." Dr. Chen diagnosed Plaintiff with a cervical strain and tingling in his left palm and recommended following up with occupational therapy or returning to the emergency room should his symptoms worsen. Plaintiff was written out of work by Dr. Chen until Plaintiff was cleared by "occupational med" to return to work.
6. Plaintiff saw Dr. Sue Nelson of Northeast Orthopedics on October 11, 2006. In Dr. Nelson's medical note from this visit the mechanism of Plaintiff's October 6, 2006, injury was again documented, as were Plaintiff's reports that he was experiencing neck pain and some "vague numbness in his left hand." Plaintiff continued to be out of work.
7. An MRI was conducted on November 8, 2006. The results of this test revealed, among other things, C6-7 "disc degeneration, disc space narrowing, and disc bulge with end plate spurring." The C6-7 level also showed "[d]isc osteophyte complex present in the left foramen contributing to severe foraminal stenosis." On November 13, 2006, Dr. Nelson saw Plaintiff in a follow-up to the MRI and noted, "[Plaintiff] does have a C6-7 disc osteophyte complex that causes severe left foraminal narrowing. This could account for [Plaintiff's] radiculopathy." Dr. Nelson then referred Plaintiff to Dr. Michael Getter, an orthopedic surgeon in the same practice of Northeast Orthopedics.
8. Plaintiff saw Dr. Getter on December 7, 2006, and related "a chief complaint of neck and right arm pain." Dr. Getter noted the mechanism of his October 6, 2006, injury and the resulting neck pain, numbness, and tingling in his arm. Dr. Getter eventually referred Plaintiff to Dr. Michael Meighen, also of Northeast Orthopedics.
9. Plaintiff saw Dr. Meighen on May 7, 2007. The note from this visit documents Plaintiff's continued "discomfort in or around the posterior cervical region" as well as "pain throughout *Page 6 
his entire spine from both upper extremities from the elbow down and into both lower extremities." Despite Plaintiff's continual discomfort and radicular pain, Dr. Meighen released Plaintiff to return to full duty work as of May 14, 2007. Plaintiff did return to full duty work on May 14, 2007. Plaintiff's symptoms worsened once he returned to full duty work.
10. On June 19, 2007, Plaintiff was seen by neurosurgeon Dr. Ranjan Roy. Based upon his evaluation, Dr. Roy diagnosed Plaintiff with "foraminal stenosis with severe cervical spondylosis at C5-6 and C6-7, both of which contribute to his arm symptoms." At the initial visit, Dr. Roy noted that he would treat Plaintiff conservatively "for now," and asked Plaintiff to follow-up with him in three months. Plaintiff continued receiving treatment from Dr. Roy. Given Plaintiff's continued problems, in 2008 Dr. Roy recommended that Plaintiff undergo decompression surgery to his cervical spine.
11. Defendants filed a Form 60 dated August 27, 2007, admitting the compensability of this claim and describing the injury as follows: "[Plaintiff] was working under the max machine and sustained a cervical strain." According to this Form 60, Defendants paid Plaintiff temporary total disability benefits commencing on October 7, 2006, and continuing for the time Plaintiff was out of work.
12. On January 21, 2008, Plaintiff filed a Form 33 Request for Hearing on the basis that Defendant-Carrier had denied Plaintiff's requests for diagnostic testing and surgery connected to his current cervical condition. Defendants' position was that these procedures were not causally related to the injury of October 6, 2006. Additionally, Plaintiff sought the designation of Dr. Roy as Plaintiff's authorized treating physician.
13. Plaintiff has worked in his maintenance technician position for Defendant-Employer since he was released to return to full duty work by Dr. Meighen on May 14, 2007. Plaintiff testified that his neck hurts every day while he works and further that he cannot take his prescription pain *Page 7 
medications while at work because he is required to operate machinery. Plaintiff had been bringing Advil with him to work. Nurse George eventually started providing Plaintiff with Advil, Tylenol, or Aleve.
14. Plaintiff would like to continue to treat under Dr. Roy and would like to undergo the surgical decompression procedure recommended by Dr. Roy.
15. Gary Green, Plaintiff's immediate supervisor, testified at the hearing. Mr. Green testified that he had been employed by Phillip Morris, on and off, for 14 years and was familiar with Plaintiff. Mr. Green testified that it was not a normal part of Plaintiff's job to repair the machine on which Plaintiff was working when he was injured. Mr. Green further testified that the particular repair Plaintiff was completing when injured on October 6, 2006, required him to assume an awkward position. Mr. Green testified that Plaintiff was trustworthy and that Mr. Green had never heard Plaintiff complain of any ailments prior to October 6, 2006.
16. Nurse George testified that, following the injury on October 6, 2006, Plaintiff had very limited neck movement.
17. Dr. Ranjan Roy testified by deposition that Plaintiff's October 6, 2006, workplace injury caused an aggravation of symptoms related to a pre-existing condition. Dr. Roy also testified that it was necessary for Plaintiff to undergo an anterior discectomy and fusion surgery to effect a cure or give relief from symptoms related to the October 6, 2006, workplace injury.
18. Dr. Michael D. Getter testified by deposition that the October 6, 2006, workplace injury caused an aggravation of Plaintiff's preexisting cervical disease and Plaintiff's subsequent cervical symptoms. *Page 8 
19. Dr. Robert C. Chen testified by deposition but could not offer an opinion regarding the causation of Plaintiff's current cervical condition.
20. Dr. Michael J. Meighen testified by deposition that Plaintiff's ongoing cervical condition was related to his degenerative disc disease and was not related to the October 6, 2006, workplace injury.
21. Dr. Sue Nelson testified by deposition that the October 6, 2006, injury did not cause any significant injury and is not causing any ongoing cervical symptoms.
22. Rhonda Smith Elliott, PA, testified by deposition regarding a September 18, 2007, medical note she made while treating Plaintiff. Ms. Elliott testified that the record reflected that Plaintiff had neck pain that was made worse by the October 6, 2006, workplace injury.
23. Having considered the testimony of Drs. Roy, Getter, Chen, Meighen, and Nelson, taken together with their expertise and relative treatment histories with Plaintiff, the Full Commission gives greater weight to the testimony and expert opinions of Drs. Roy and Getter.
24. On October 6, 2006, Plaintiff suffered a compensable injury by accident to his cervical spine that arose out of and in the course of his employment with Defendant-Employer. The accident constituted an interruption of Plaintiff's normal work routine and the introduction thereby of conditions likely to result in unexpected consequences.
25. The credible medical evidence of record shows that, as a result of his October 6, 2006, admittedly compensable injury, Plaintiff currently suffers from a cervical spine condition that requires medical treatment.
26. Given the facts of this case, Dr. Roy is the best physician to assume Plaintiff's care at this time. Dr. Roy's care is reasonably calculated to provide relief from Plaintiff's compensable condition.
 *********** *Page 9 
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. In order to establish a compensable back injury, Plaintiff must prove that the disabling back injury arose out of and in the course of the employment and was the direct result of either an injury by accident or a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6);Richards v. Town of Valdese, 92 N.C. App. 222, 224, 374 S.E.2d 116, 118
(1988), disc. review denied, 324 N.C. 337, 378 S.E.2d 799 (1989). Our courts have held that an injury is also compensable if it materially accelerates or aggravates a preexisting condition, and proximately contributes to disability. N.C. Gen. Stat. § 97-2; Brown v. Family DollarDistribution Center, 129 N.C. App. 361, 499 S.E.2d 197 (1998).
2. On October 6, 2006, Plaintiff suffered an admittedly compensable injury by accident to his cervical spine that arose out of and in the course of his employment with Defendant-Employer. The accident constituted an interruption of Plaintiff's normal work routine and the introduction thereby of conditions likely to result in unexpected consequences. N.C. Gen. Stat. § 97-2(6); Harding v. Thomas Howard Co.,256 N.C. 427, 124 S.E.2d 109 (1962). This compensable injury by accident caused Plaintiff's current cervical condition or materially accelerated or aggravated a preexisting non-disabling condition. N.C. Gen. Stat. §97-2(6); Brown, supra.
3. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, Plaintiff is entitled to have Defendants provide all medical treatment, incurred or to be incurred, necessitated by the October 6, 2006, compensable injury, including such treatment for Plaintiff's current cervical condition, when bills *Page 10 
for the same have been approved pursuant to Industrial Commission procedures. N.C. Gen. Stat. §§ 97-25, 97-25.1.
4. Regarding this medical treatment, the North Carolina Workers' Compensation Act gives the Industrial Commission the power to "order such further [medical] treatments as may in the discretion of the Commission be necessary," with the cost to be borne by Defendants. Furthermore, the Industrial Commission may "at any time . . . order a change in treatment and designate other treatment suggested by the injured employee. . . ." N.C. Gen. Stat. § 97-25. Given the facts of this case, Dr. Roy is the best physician to assume Plaintiff's care at this time. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay all medical expenses incurred or to be incurred as a result of the October 6, 2006, compensable injury, including such treatment for Plaintiff's current cervical condition, when bills for the same have been approved pursuant to Industrial Commission procedures, subject to the provisions of N.C. Gen. Stat. § 97-25.1. Going forward, Plaintiff's treatment shall be directed by Dr. Roy.
2. Should surgery to Plaintiff's cervical spine be recommended hereafter by Dr. Roy as Plaintiff's authorized treating physician, Defendants shall have the right to obtain a second opinion on the surgery by a physician of their choice.
3. Defendants shall pay the costs. *Page 11 
This the 13th day of July, 2009.
S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ LAURA K. MAVRETIC COMMISSIONER
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1